JOHN D. TUPPER *vs.* UNION STREET RAILWAY COMPANY.
LOUISE E. TUPPER *vs.* SAME.

Bristol.    October 25, 1920. — March 2, 1921.

Present: RUGG, C. J., BRALEY, DE COURCY, CROSBY, PIERCE, CARROLL, & JENNEY, JJ.

*Negligence,* Street railway, In use of highway.

At the trial of an action against a street railway company for personal injuries received when the plaintiff was riding in a motor car, which in the night time ran into an unlighted team from the rear, the plaintiff contended that the collision was due to the fact that the driver of the motor car was blinded by glaring headlights of an approaching street car of the defendant. It appeared that the street car track was on the right hand side of the highway as the plaintiff faced and that the travelled way was forty feet wide; that the street car was coming up hill "going at a rapid pace but not more so than usual," that the driver of the motor car began to be blinded by the light when the street car was about one hundred feet from him; that, when the street car was a little more than fifty feet from him, the glaring light was turned off, but that in the meantime the motor car, which was travelling at a rate of from seven to sixteen miles an hour, ran into the team. There was no evidence that the motorman of the street

car saw the motor car before he turned off the headlight of the street car. *Held,* that there was no evidence of negligence on the part of the motorman.

At the trial of the action above described, there was admitted in evidence a circular letter of the board of railroad commissioners, dated May 21, 1906, stating that "If an arc light of high candle power is to be used companies should adopt some method for so governing the light as to practically confine it to the track whenever a suitable device for doing this can be found. Meanwhile, this light should be turned off or obscured when cars are moving through streets otherwise well lighted or through thickly settled communities;" and that under St. 1906, c. 463, Part I, § 14, "No request or advice of the board shall in any manner impair the legal duties and obligations of a railroad corporation or street railway company or its legal liability for the consequences of its acts or of the neglect or mismanagement of any of its agents or servants." *Held,* that the letter afforded no evidence of negligence on the part of the defendant.

Two ACTIONS OF TORT, the second being for personal injuries received when a motor car, in which the plaintiff was riding with her husband who owned and was operating it, ran into a team upon the highway because he became blinded by a glaring headlight upon an approaching electric street car of the defendant, alleged to have been negligently operated. The first action was by the husband for consequential damages and damage to the motor car. Writs dated January 9, 1915.

In the Superior Court, the actions were tried together before *J. F. Brown,* J. Material evidence is described in the opinion. At the close of the evidence, by order of the judge, a verdict was entered for the defendant in each action; and the judge reported the actions to this court for determination, with the stipulation that, if his ruling was wrong, there was to be judgment for the plaintiff in the first action in the sum of $250, and for the plaintiff in the second action in the sum of $400, and, if the ruling was right, there was to be judgment for the defendant on the verdicts.

The cases were argued at the bar in October, 1920, before *Rugg,* C. J., *De Courcy, Crosby, Carroll,* & *Jenney,* JJ., and afterwards were submitted on briefs to all the Justices.

*L. E. Wood,* for the plaintiffs.

*D. E. Hall,* for the defendant.

CARROLL, J. The plaintiffs, husband and wife, were riding in an automobile on a dark night, going easterly on the highway leading from Fall River to New Bedford. There was evidence that the driver of the automobile, John D. Tupper, was so blinded by the rays of an electric searchlight on one of the defendant's

cars, that he ran into an unlighted team on the highway going in the same direction. His automobile was damaged and the female plaintiff was injured.

The negligence relied on was that the motorman failed to shut off or dim the searchlight as the car approached the plaintiffs going in an opposite direction. The defendant's double track is on the south side of the highway. The highway north of the northerly track is about forty feet wide at the place of the accident. There were no houses on either side of the highway, "it was grove and woods and swamp land; and . . . there were no electric lights or town lights." The defendant's car was going up grade. The driver of the automobile testified he was going down grade on the right of the highway, not occupied by the railroad tracks, that as the car drew near him, "going at a rapid pace but not more so than usual, the light was not dimmed until just before it reached a point opposite him, and the effect was to blind him so that he could not see the road or anything on it. . . . I began then to slow down, and slowed down to about seven or eight miles an hour, and I was going to stop . . . had my foot on the brake, I saw then the back of this cart going ahead of me, and my left fender and wheel struck his right hand wheel. I crashed right into it. . . . I couldn't see my hand before me it was so bright, and I was expecting every minute he would shut it off;" that "when he first saw the approaching car, it was at Smith Mills, and he was half down the hill . . . that the headlights on the car were lighted; . . . that he began to be blinded by the light when the street car coming toward him was about one hundred feet away from him." That when the light on the car was turned off, it was "a little more than fifty feet from the automobile. The automobile was then about a foot from the cart."

In *Spoatea* v. *Berkshire Street Railway*, 212 Mass. 599, the plaintiff, travelling in the night time upon a bicycle on a highway, was injured by a collision with a team. The plaintiff testified he was so dazzled by the headlight on one of the defendant's cars approaching on its track, that he was unable to guide his bicycle. The street was wide, the tracks of the defendant were on its side and there was ample room to pass in safety but for the blinding effect of the headlight. It was said in the opinion that the facts

were "too meagre to show any negligence on the part of the defendant, either in the character or management of the light or in the running of the car. At most, there appears to have been only a momentary blinding of the plaintiff, as the rays from a headlight such as are in common use included him in their range for an instant while the car came around a curve. More facts than these must appear before it can be said that there was fault in the use or operation of the light or car." In that case the traveller was dazzled by the headlight as the car came around a curve. In the case at bar, we assume the highway at the scene of the accident was straight, but this circumstance is not enough to distinguish the cases. When the driver of the automobile first saw the car approaching him, "he was half down the hill . . . [and] the headlights on the car were lighted." But he was not dazzled by the headlight until it was one hundred feet away from him; and when fifty feet distant the light was turned off. According to the plaintiff's testimony the car was then moving rapidly, and he was travelling at the rate of from seven to fifteen miles an hour; and it was during this very brief interval while the car went the distance of fifty feet that the light dazzled him. The defendant had the right to use the headlight, *Daigneau* v. *Worcester Consolidated Street Railway*, 231 Mass. 166, 168, and the fact that the plaintiff, while a traveller on the highway, was dazzled by the headlight while the car going rapidly had moved but fifty feet, is insufficient to show anything more than a momentary dazzling or blinding such as happened to the plaintiff in *Spoatea* v. *Berkshire Street Railway, supra;* and such facts do not establish negligence in the use or operation of the headlight.

In the case at bar there was nothing to show that the motorman saw the plaintiff's automobile, which was behind the unlighted cart, until the light was dimmed; and it cannot be said in these circumstances that there was evidence of negligence of the motorman in failing to dim the light. See *Hansen* v. *Fitchburg & Leominster Street Railway*, 222 Mass. 116.

A circular letter of the board of railroad commissioners of May 21, 1906, was in evidence. It provided: "A railway in or along the side of a highway offers opportunities for obstruction that are not offered where railways are constructed over private land. To meet these conditions cars upon some lines have been

equipped with a powerful arc light as a safeguard against accident. It is undoubtedly necessary to throw light a considerable distance ahead of a car at night. If an arc light of high candle power is to be used companies should adopt some method for so governing the light as to practically confine it to the track whenever a suitable device for doing this can be found. Meanwhile, this light should be turned off or obscured when cars are moving through streets otherwise well lighted or through thickly settled communities." Under St. 1906, c. 463, Part I, § 14, "No request or advice of the board shall in any manner impair the legal duties and obligations of a railroad corporation or street railway company or its legal liability for the consequences of its acts or of the neglect or mismanagement of any of its agents or servants." Although this circular letter was admitted without objection, it did not in any way aid the plaintiffs and did not establish negligence on the part of the defendant or its servants.

As the plaintiffs have not shown that the defendant was negligent, we have not found it necessary to consider the question of their care. In the opinion of a majority of the court, in each case judgment should be entered for the defendant on the verdict; and it is

*So ordered.*